## City of Paducah et al. v. Commonwealth ex rel. Oates, Commissioner of Revenue.

March 7, 1944.

Adrian H. Terrell for appellants.

Eldon S. Dummit, Attorney General, and Roy W. House, Assistant Attorney General, Chat ·Chancellor and John E. Kirksey for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

There is involved in this case the question of whether property purchased by the city of Paducah at a commissioner's sale to satisfy tax and improvement liens, and held solely for resale, is subject to state, county and school taxes. The effect of the chancellor's ruling was that it is. We believe the ruling to be correct.

Section 170 of the Constitution exempts from taxation public property used for public purposes. The appellants vigorously contend that, in order to come within the exemption, it is not necessary that there be in every instance an actual physical employment or occupation of the property for public purposes. They insist that, where such property is held by the city for resale only, and the entire proceeds from the resale are paid into the general fund to replace tax revenues lost through the owner's failure to pay his taxes, such a holding is a public use within the meaning of the Constitution. Stress is placed upon the case of Commonwealth v. City of Louisville, 133 Ky. 845, 119 S. W. 161. There was involved in that case the question of whether property owned by the City of Louisville along the Ohio River front was subject to taxation. A part of the property

was used as a wharf and the remainder was leased to various persons who did business on the banks of the river. The income from the property was paid into the sinking fund. This Court held the property to be exempt from taxation, but there, the property was actually put to public use, the income going into the sinking fund, while in the case at bar it is admitted the property was purchased solely for the purpose of resale.

While the question appears to be one of first impression in this jurisdiction, an examination of the annotations in 129 A. L. R. 480, 101 A. L. R. 787, and 3 A. L. R. 1435, will show it has arisen in other jurisdictions. An examination of the opinion reported in the case of Shelby County v. McCanless, Tenn., 163 S. W. (2d) 63, 65, will show that the question was up for consideration in Tennessee in 1942. The tax exemption provision in the Tennessee Constitution is similar to that found in Section 170 of our Constitution.

After the opinion in the case at bar was prepared we were advised that the opinion in the Shelby County case had been withdrawn from the records, because a subsequent statute had made the controversy moot. We are much impressed with the reasoning in the following quotation from the opinion in the Shelby County case, and we quote it herein, because it clearly reviews the practical aspects of the problem:

" * * * No possible excuse can be offered for the State or any political subdivision thereof to delay its processes for the collection of taxes until the total amount so delinquent, including interest and penalties, becomes so large that there is little or no inducement for the property owner to exercise his right of redemption. While the County of Shelby and City of Memphis have not been in the least derelict in the matter of collecting delinquent taxes, we are concerned with a broad principle, applicable to all counties and municipalities, and not with conditions as may be shown to exist in a local community. No one can deny the fact that during the period of delinquency the taxing authority is not only being deprived of its rightful revenue, but the property is gradually losing taxable value, due to financial inability of the owner to keep it in a proper state of repair. When the taxing unit of government acquires it at a tax sale, it becomes dead property until its resale, with the possibility of acquiring some rentals during the period of ownership. Whether or not such property

shall ever again be subject to taxation must depend not alone upon the intense desire to resell to some private citizen by the City or County, but upon general economic conditions and skill in real estate salesmanship. It is a strain upon our imagination for us to try and conceive that it was ever the intention of the framers of the Constitution or the Legislature of the State that property held in these circumstances should be exempt from taxation on the ground that it is being used exclusively for public purposes. We think it should be quite manifest to every thoughtful person that if the State, County, or City exercises its right to resell property immediately or within a reasonable time after the tax becomes delinquent, there is every reason to believe that the property owner will redeem it. It will without any interruption continue to remain upon the tax books and of course liable for any and all assessments. If one piece of property may become dead property because of the delay in the taxing authority to compel payment of delinquent taxes, as we have pointed out, any number may thus be swept from the tax books to the injury of taxpayers generally.''

The logic of this reasoning is brought home to us when we view what has happened in Paducah. The appellants' brief shows that ad valorem tax delinquencies in Paducah amounted to nearly $357,000 in 1938. While there has been an effort made since that time to collect these delinquent taxes, the city now owns more than one hundred pieces of property valued at approximately $32,000. This property is not being used by the city for any purpose, but is merely being held for resale. Of course, the proceeds of the resales will be paid into the general fund in lieu of taxes, but, as heretofore indicated, we are not disposed to construe section 170 of the Constitution as meaning that property so held is being used for a public purpose.

Judgment affirmed.